UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMILY DEMBICZAK,<br><br>                    Plaintiff,<br><br>        v.<br><br>FASHION NOVA, LLC,<br><br>                    Defendant. | CASE NO. 2:23-cv-00408-LK<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND ORDERING PARTIES TO SHOW CAUSE |

This matter comes before the Court on Defendant Fashion Nova, LLC's Motion to Compel Arbitration and Stay Proceedings. Dkt. No. 24. Plaintiff Emily Dembiczak opposes the motion. Dkt. Nos. 31, 36. For the reasons discussed below, the Court denies Fashion Nova's motion and orders the parties to show cause why this case should not be transferred to California.[1]

## I.   BACKGROUND

Dembiczak initiated this putative class action in March 2023, seeking relief on behalf of herself and other customers who purchased Fashion Nova products. Dkt. No. 1 at 5. She alleges

---

[1] Because the Court can decide this matter based on the parties' filings, it denies their requests for oral argument. Dkt. No. 24 at 1; Dkt. No. 31 at 1.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND ORDERING PARTIES TO SHOW CAUSE - 1

that Fashion Nova misleads customers into falsely believing that they are receiving a substantial discount from an item's retail price as part of an online sale, when in reality such items are continually on sale. *Id.* at 3–8, 11. Dembiczak claims that Fashion Nova's advertising of such false bargains violates Section 19.86.020 of Washington's Consumer Protection Act, and that by failing to provide her with a product equal in value to the advertised "regular" price, as well as the promised discount, Fashion Nova committed breach of contract, breach of express and implied warranties, and several other common law violations. *Id.* at 9–11, 13–19. On behalf of herself and the putative class, Dembiczak seeks monetary and injunctive relief. *Id.* at 19.

On April 19, 2023, the parties filed a stipulated motion to extend the case deadlines and stay discovery in anticipation of Fashion Nova's motion to compel arbitration, which it filed the following day. Dkt. Nos. 23–24. On April 21, 2023, the Court granted the parties' stipulation and stayed Fashion Nova's answer deadline and all discovery in the case pending the resolution of the instant motion. Dkt. No. 30 at 3. Fashion Nova's motion to compel arbitration was fully briefed as of June 14, 2023. *See* Dkt. Nos. 31–34, 36.

## II.   DISCUSSION

### A.   Jurisdiction

The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)–(5), because the aggregate amount in controversy, exclusive of costs and interests, exceeds $5,000,000, at least one member of the proposed class is a citizen of a different state than Fashion Nova, and the number of class members in the proposed class exceeds 100. Dkt. No. 1 at 5, 12. Fashion Nova is a limited liability company that is a citizen of California,[2] while Dembiczak and the putative class are citizens of Washington. *Id.* at 5, 12.

---

[2] The sole member of Fashion Nova, LLC is Fashion Nova Holding, LLC, whose sole member is Nova Fashion, Inc. Dkt. No. 20 at 2. Nova Fashion's principal place of business and state of incorporation is California. Dkt. No. 1 at 5.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND ORDERING PARTIES TO SHOW CAUSE - 2

1    **B.      Legal Standard**

2         Under the Federal Arbitration Act ("FAA"), courts must enforce a commercial agreement

3    to "arbitrat[e] a controversy thereafter arising out of such contract[.]" 9 U.S.C. § 2. A party

4    aggrieved by the alleged failure of an opposing party to arbitrate under a written agreement for

5    arbitration may petition the district court for "an order directing that such arbitration proceed in

6    the manner provided for in such agreement." *Id.* § 4. The FAA further provides that arbitration

7    agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

8    or in equity for the revocation of any contract[.]" *Id.* § 2. This provision reflects "both a liberal

9    federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of

10   contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up).

11        When deciding whether to compel arbitration, a court must generally "determine two

12   'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and

13   (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th

14   Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)); *accord Revitch*

15   *v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). "However, these gateway issues can be

16   expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide

17   otherwise.'" *Brennan*, 796 F.3d at 1130 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of*

18   *Am.*, 475 U.S. 643, 649 (1986) (emphasis added in *Brennan*)); *see also Henry Schein, Inc. v. Archer*

19   *& White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Accordingly, courts "should order arbitration of

20   a dispute only where the court is satisfied that neither the formation of the parties' arbitration

21   agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its

22   enforceability or applicability to the dispute is in issue." *Caremark, LLC v. Chickasaw Nation*, 43

23   F.4th 1021, 1030 (9th Cir. 2022) (emphasis omitted) (quoting *Granite Rock Co. v. Int'l Bhd. of*

24   *Teamsters*, 561 U.S. 287, 299 (2010)).

1    **C.    Fashion Nova's Motion to Compel Arbitration**

2    Fashion Nova seeks an order directing the parties to complete mandatory arbitration based

3    on the Terms of Service (the "Terms") that Dembiczak agreed to when completing her purchase

4    on Fashion Nova's website. Dkt. No. 24 at 7–10, 14–19; Dkt. No. 24-2 at 2–5 (Terms); *see also*

5    Dkt. No. 24-6 at 2 (Dembiczak's April 22, 2020 order confirmation). Dembiczak does not dispute

6    that she agreed to Fashion Nova's Terms or that the Terms require arbitration in certain cases. *See*

7    *generally* Dkt. No. 31; Dkt. No. 32 at 7. Rather, she argues that the Terms' arbitration clause

8    contains a carveout provision for actions like hers which seek injunctive relief, and therefore this

9    action should remain in federal court. Dkt. No. 31 at 4–13.

10    In its reply, Fashion Nova denies that this "narrow exception" to mandatory arbitration

11    applies to Dembiczak's suit and argues for the first time that "[t]he parties' agreement delegates

12    threshold arbitrability questions to the arbitrator[.]" Dkt. No. 32 at 6; *see id.* at 7–13. Because

13    Dembiczak did not have an opportunity to respond to Fashion Nova's delegation arguments, the

14    Court granted her request to file a surreply. Dkt. Nos. 33–35. In her surreply, Dembiczak contends

15    that Fashion Nova waived any arguments regarding a purported delegation clause in the Terms,

16    and even if it did not, the Terms lack clear and unmistakable evidence of the parties' intent to

17    delegate questions of arbitrability. Dkt. No. 36 at 2–6.[3]

18    For the reasons stated below, the Court finds that the parties formed an agreement to

19    arbitrate, that the agreement lacks clear and unmistakable evidence of an intent to delegate

20    questions of arbitrability, and that because the injunctive relief carveout applies in this case under

21    Fashion Nova's express terms, Dembiczak's suit falls outside the scope of the arbitration

22

23    _____
      [3] The Court does not reach Dembiczak's waiver arguments because even if Fashion Nova reserved such arguments,
      the Court concludes that the Terms lack clear and unmistakable evidence that the parties delegated disputes regarding
24    arbitrability to an arbitrator. *See, e.g.*, *Camarillo v. Balboa Thrift & Loan Ass'n*, No. 3:20-CV-00913-BEN-BLM,
      2021 WL 409726, at *11 (S.D. Cal. Feb. 4, 2021).

agreement. However, in light of the forum selection clause also contained in the carveout provision, the Court orders the parties to show cause within 21 days why this case should not be transferred to the Southern District of California.[4]

      1.  <u>Formation of An Agreement to Arbitrate</u>

At the time Dembiczak completed her purchase, Fashion Nova's Terms had been in effect since December 2018 and remained unchanged through the date it filed its motion to compel arbitration in this case. Dkt. No. 24-1 at 4. The Terms include a bolded notice of arbitration near the top:

> **THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT AND CLASS ACTION WAIVER THAT WAIVE YOUR RIGHT TO A COURT HEARING OR JURY TRIAL OR TO PARTICIPATE IN A CLASS ACTION. ARBITRATION IS MANDATORY AND THE EXCLUSIVE REMEDY FOR ANY AND ALL DISPUTES UNLESS SPECIFIED BELOW OR IF YOU OPT-OUT. YOU MUST REVIEW THIS DOCUMENT IN ITS ENTIRETY BEFORE ACCESSING, USING, OR BUYING ANY PRODUCT THROUGH THE WEBSITE.**

Dkt. No. 24-2 at 2. Further down, under the heading "Dispute Resolution by Binding Arbitration and Class Action Waiver," the Terms then state in relevant part:

> Any dispute relating in any way to your visit to, or use of, the Website, the Products, or any purchase or otherwise related to this Agreement ("Disputes") shall be submitted to confidential arbitration in Los Angeles, California, USA and shall be governed exclusively by the laws of the State of California, excluding its conflict of law provisions. If a Dispute arises under this Agreement, you agree to contact us at legal@fashionnova.com (email). Before formally submitting a Dispute to arbitration, you and Fashion Nova may choose to informally resolve the Dispute. If any Dispute cannot be resolved informally, you agree that any and all Disputes, other than those filed in small claims court, shall be submitted to final and binding arbitration before a single arbitrator of the American Arbitration Association ("AAA") in a location convenient to you or telephonically. Either you or Fashion Nova may commence the arbitration process by submitting a written demand for

---

[4] Under Ninth Circuit precedent, this Court may entertain a motion to compel arbitration even though the arbitration agreement designates that arbitration must occur in Los Angeles. *See Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 784–86 (9th Cir. 2001); *Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1141 (9th Cir. 2022); *but see Hetrick Companies LLC v. IINK Corp.*, No. 1:23-CV-961, 2024 WL 47408, at *12–13 (E.D. Va. Jan. 3, 2024) (describing three different approaches courts have taken when a motion to compel arbitration is brought outside the district in which the arbitration agreement specifies that arbitration shall occur).

arbitration with the AAA, and providing a copy to the other party. The arbitration will be conducted in accordance with the provisions of the AAA's Commercial Dispute Resolutions Procedures, Supplementary Procedures for Consumer-Related Disputes, in effect at the time of submission of the demand for arbitration. Except as may be required by law as determined by the arbitrator, no party or arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties. Fashion Nova will pay all of the filing costs. Notwithstanding the foregoing, the following shall not be subject to arbitration and may be adjudicated only in the state and federal courts of California: (i) any dispute, controversy, or claim relating to or contesting the validity of Fashion Nova's intellectual property rights and proprietary rights, including without limitation, patents, trademarks, service marks, copyrights, or trade secrets; (ii) an action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief; (iii) any legal action by Fashion Nova against a non-consumer; or (iv) interactions with governmental and regulatory authorities. You expressly agree to refrain from bringing or joining any claims in any representative or class-wide capacity, including but not limited to bringing or joining any claims in any class action or any class-wide arbitration.

. . .

YOU UNDERSTAND THAT YOU WOULD HAVE HAD A RIGHT TO LITIGATE IN A COURT, TO HAVE A JUDGE OR JURY DECIDE YOUR CASE AND TO BE PARTY TO A CLASS OR REPRESENTATIVE ACTION. HOWEVER, YOU UNDERSTAND AND AGREE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY AND ONLY THROUGH ARBITRATION. You shall have thirty (30) days from the date that you purchase a product or provide information to the website to opt-out of this arbitration agreement. To opt out of arbitration you must contact us in writing at legal@fashionnova.com (email). If more than thirty (30) days have passed from the date that you purchase a product, you are not eligible to opt out of arbitration with respect to claims relating to that product. If more than thirty (30) days have passed from the date that you provide information to the website, you are not eligible to opt out of arbitration with respect to claims relating to the website.

*Id.* at 3–4.

Neither party disputes that Dembiczak agreed to Fashion Nova's Terms, including the arbitration clause, when she purchased jeans on Fashion Nova's website in April 2020. *See* Dkt. No. 24 at 7–8; Dkt. No. 24-6 at 2; Dkt. No. Dkt. No. 31 at 3 ("The Court should enforce the agreement as drafted[.]"). Indeed, before submitting an order on Fashion Nova's site, customers are shown the following message directly above the "Pay now" button: "By submitting your order, you agree to our **Terms of Service**, **Privacy Policy**, and **Returns Policy**." Dkt. No. 24-3 at 2; *see*

*also* Dkt. No. 24-4 at 3 (same); Dkt. No. 24-1 at 2 (declaration of Fashion Nova's Vice President of Technology noting that "Terms of Service" is hyperlinked to the full text of the Terms). Such notice on a business's website is generally sufficient to give rise to an enforceable agreement, and the Court finds no basis to conclude otherwise in this case. *See, e.g.*, *Patrick v. Running Warehouse*, No. 22-56078, 2024 WL 542831, at *4 (9th Cir. Feb. 12, 2024) (plaintiff "manifested assent to the Terms by clicking the 'Place Order' button to complete his purchase"); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) ("[A]n enforceable agreement may be found where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." (cleaned up)).

Having determined that the parties formed an agreement to arbitrate, the Court next turns to whether the question of arbitrability has been delegated to the arbitrator.

2. <u>The Terms Do Not Clearly and Unmistakably Delegate Questions of Arbitrability to an Arbitrator</u>

 "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark*, 43 F.4th at 1029. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up); *accord Henry Schein*, 139 S. Ct. at 531.

Fashion Nova argues that the parties agreed to delegate questions of arbitrability to the arbitrator by incorporating the American Arbitration Association's ("AAA") "rules for consumers." Dkt. No. 32 at 8. Dembiczak counters that the rules that are incorporated into the Terms (1) are not the Consumer Arbitration Rules, (2) are impossible to find, and (3) "do[] not say

anything about delegating arbitrability to the arbitrator." Dkt. No. 36 at 3–4.

The Terms state that "[t]he arbitration will be conducted in accordance with the provisions of the AAA's Commercial Dispute Resolutions Procedures, Supplementary Procedures for Consumer-Related Disputes, in effect at the time of submission of the demand for arbitration." Dkt. No. 24-2 at 3. As Dembiczak points out, the AAA has never had rules titled "Commercial Dispute Resolutions Procedures, Supplementary Procedures for Consumer-Related Disputes." About six years before Dembiczak made her purchase with Fashion Nova, the AAA had rules called the "Consumer-Related Disputes Supplementary Procedures." *See* AAA, *Consumer-Related Disputes Supplementary Procedures* (Sept. 15, 2005), https://www.adr.org/sites/default/files/Consumer%20Related%20Disputes%20Supplementary%20Procedures%20Sep%2015%2C2005.pdf (last visited Feb. 8, 2024). Section C-1 of those rules stated that "The Commercial Dispute Resolution Procedures and these Supplementary Procedures for Consumer-Related Disputes shall apply whenever the American Arbitration Association (AAA) or its rules are used in an agreement between a consumer and a business[.]" *Id.* at 5. Of course, Dembiczak would have had to find those rules first—a formidable task.

An internet search (in quotes) for "Commercial Dispute Resolutions Procedures, Supplementary Procedures for Consumer-Related Disputes" would have been fruitless because again, such rules never existed. The same search without quotes results in a smattering of different AAA rules. If Dembiczak searched instead for "Commercial Dispute Resolutions Procedures," her search engine would likely have corrected the search to "Commercial Dispute *Resolution* Procedures" and returned a number of AAA "Commercial Dispute Resolution Procedures": the 2000 version, the 2002 version, the 2003 version, and perhaps the then-active AAA commercial

rules—though their title varied significantly from the prior versions.[5]

Even if Dembiczak had divined that a newer version of the nonexistent "Commercial Dispute Resolutions Procedures, Supplementary Procedures for Consumer-Related Disputes" might be in effect, it would be unclear which AAA rules supplanted them. The AAA's long list of active rules as of September 2020 includes "Consumer Arbitration Rules," "Non-Binding Consumer Arbitration Rules," and "Commercial Arbitration Rules and Mediation Procedures." AAA, *Rules, Forms, Fees: Active Rules* (Sept. 21, 2020), www.adr.org/active-rules [https://web.archive.org/web/20200921095518/https://www.adr.org/active-rules].[6]   Although incorporation of AAA rules often "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," *Brennan*, 796 F.3d at 1130, that is not true where the contract at issue incorporates nonexistent or indiscernible AAA rules, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022) (a consumer must receive notice of the terms to which she will be bound).

Finally, the Terms themselves indicate that the parties did not intend to delegate the issue of arbitrability to an arbitrator for disputes involving requests for injunctive relief. The Terms expressly state that "the following *shall not be subject to arbitration and may be adjudicated only in the state and federal courts of California*: . . . an action by a party for temporary, preliminary,

---

[5]   *See* AAA, *Commercial Dispute Resolution Procedures* (Sept. 1, 2000), https://www.adr.org/sites/default/files/Commercial_Dispute_Resolution_Procedures.pdf (last visited Feb. 10, 2024); AAA, *Commercial Dispute Resolution Procedures* (July 1, 2002), https://www.adr.org/sites/default/files/CommericalDisputeResolutionProcedures.pdf (last visited Feb. 10, 2024); AAA, *Commercial Dispute Resolution Procedures*, (Jan. 1, 2003), https://www.adr.org/sites/default/files/Commercial_Dispute_Resolution_Procedures-Amended.pdf (last visited Feb. 10, 2024); AAA, *Commercial Arbitration Rules and Mediation Procedures* (Oct. 1, 2013), https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf (last visited Feb. 12, 2024).

[6] The AAA's "Commercial Dispute Resolution Procedures" appear to have been superseded in July 2003 by the "Commercial Arbitration Rules and Mediation Procedures," which were then amended in 2005, 2007, 2009, and 2013. AAA, *Rules, Forms, Fees: Archived Rules*, https://www.adr.org/ArchiveRules (last visited Feb. 12, 2024). The AAA's "Consumer-Related Disputes Supplementary Procedures" were superseded in September 2014 by the AAA's Consumer Arbitration Rules. *See* Beth Graham, *New AAA Consumer Arbitration Rules are Now in Effect* (Sept. 19, 2014), https://mediate.com/new-aaa-consumer-arbitration-rules-are-now-in-effect/.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND ORDERING PARTIES TO SHOW CAUSE - 9

or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief[.]" Dkt. No. 24-2 at 3 (emphasis added). As explained below, Dembiczak's lawsuit is such an action. "[C]ourts must enforce arbitration contracts according to their terms," *Henry Schein, Inc.*, 139 S. Ct. at 529, and sending this dispute to arbitration to adjudicate arbitrability would contravene the Terms' express directives that actions for injunctive relief (1) "may be adjudicated only in the state and federal courts of California" and (2) "shall not be subject to arbitration."

Under these circumstances, the Court cannot conclude that there is clear and unmistakable evidence that the parties intended to delegate disputes as to arbitrability to the arbitrator.

3.  The Carveout Provision For Actions Seeking Injunctive Relief Applies, But So Does the Forum Selection Clause

Absent a valid delegation provision, the Court must decide whether Dembiczak's claims are subject to the Terms' arbitration agreement. *Caremark*, 43 F.4th at 1030. "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. "Federal courts sitting in diversity look to the law of the forum state . . . when making choice of law determinations." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Under Washington law, courts generally enforce an agreement's choice of governing law absent a conflict between the laws of Washington and the agreement's choice of law provision. *See Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1235, 1242 (W.D. Wash. 2014); *Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 131–32 (Wash. 2011).

In its motion to compel arbitration, Fashion Nova contends that Dembiczak agreed that "any dispute arising between her and Fashion Nova would be governed by California law," but nonetheless cites to authority from both California and Washington. Dkt. No. 24 at 13 n.1; *see* Dkt. No. 24-2 at 3 ("Any dispute relating in any way to your visit to, or use of, the Website, the Products,

1  or any purchase or otherwise related to this Agreement ('Disputes') . . . shall be governed

2  exclusively by the laws of the State of California, excluding its conflict of law provisions."). In its

3  reply, however, Fashion Nova states that "Washington state law controls[.]" Dkt. No. 32 at 11. For

4  her part, Dembiczak appears to formulate her arguments under Washington law but does not

5  explicitly address this issue. *See, e.g.*, Dkt. No. 31 at 10. Without a basis to conclude otherwise,

6  the Court assumes without deciding that California law applies in accordance with the language of

7  the Terms, but notes that Washington law would dictate the same outcome articulated below.

8  *(a) The Carveout Provision for Injunctive Relief Applies to This Action*

9  At bottom, whether this action must be submitted to mandatory arbitration boils down to

10  the interplay between two clauses contained within the same paragraph of the Terms: the

11  arbitration clause and the carveout provision. Specifically, the parties dispute the extent to which

12  Dembiczak's suit qualifies as "an action by a party for temporary, preliminary, or permanent

13  injunctive relief," Dkt. No. 24-2 at 3, and how the Court should interpret the carveout provision in

14  light of the Terms' broad arbitration clause.

15  Fashion Nova asserts that "[c]ontrary to [Dembiczak]'s naked assertion that Fashion Nova

16  intended to exclude any and all cases that might include injunctive relief, Fashion Nova's terms

17  read as a whole make clear that it is just the injunctive relief claim that is not arbitrable—and not

18  the entire lawsuit." Dkt. No. 24 at 22; *see also* Dkt. No. 32 at 11 (arguing that Dembiczak's

19  proposed interpretation would "render the entire arbitration clause meaningless" because a

20  "prospective plaintiff would be able to evade the arbitration agreement" merely "by tacking on a

21  request for injunctive relief").[7] Alternatively, Fashion Nova asks that the Court sever Dembiczak's

22

23  [7] The Court does not address Fashion Nova's arguments regarding Dembiczak's standing to pursue injunctive relief, Dkt. No. 24 at 19–21, as such arguments are more appropriately raised in a motion filed pursuant to Federal Rule of Civil Procedure 12(b), *see* Dkt. No. 31 at 8; *Steelcase Inc. v. Nationwide Indem. Co.*, No. 2:14-CV-06291-SVW-RZ, 2015 WL 12828056, at *3 (C.D. Cal. Feb. 10, 2015). In addition, Fashion Nova appears to have abandoned such arguments on reply. *See generally* Dkt. No. 32.

24

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND ORDERING PARTIES TO SHOW CAUSE - 11

1    request for injunctive relief pending arbitration of her other claims. Dkt. No. 24 at 22–23; Dkt. No.

2    32 at 13.[8]

3         Dembiczak counters that a plain reading of the arbitration agreement dictates that an action

4    for injunctive relief is not subject to arbitration—and hers is an action for injunctive relief. Dkt.

5    No. 31 at 4–8, 10–11; *see id.* at 8 ("[T]he language of [Fashion Nova]'s arbitration clause is clear:

6    actions like this, for injunctive relief, are barred from arbitration and must proceed in court. And

7    [Fashion Nova] should be held to the terms it used in the contract of adhesion it drafted.").

8         In general, parties may shape arbitrations agreements "to their liking by specifying with

9    whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate,

10   and the arbitrators who will resolve their disputes," and no matter what they settle on, the task for

11   the courts and arbitrators alike is "to give effect to the intent of the parties." *Lamps Plus, Inc. v.*

12   *Varela*, 139 S. Ct. 1407, 1416 (2019) (cleaned up). Courts "look first to whether the parties agreed

13   to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement."

14   *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (cleaned up). And "[w]hile ambiguities

15   in the language of the agreement should be resolved in favor of arbitration," courts will "not

16   override the clear intent of the parties, or reach a result inconsistent with the plain text of the

17   contract, simply because the policy favoring arbitration is implicated." *Id.* In addition, under both

18   California and Washington law, when the terms of the written contract are clear, courts ascertain

19   the parties' intent by looking to the terms of the contract and giving effect to the plain meaning of

20   said terms. *See Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 326 P.3d 253, 259 (Cal. 2014); Cal.

21

22   ---

[8] In support of its arguments, Fashion Nova points to a recent California state court's order which it claims "resoundingly denied" a similar plaintiff's opposition to its motion to compel arbitration, and instead enforced the
23   mandatory arbitration provision to all claims except a request for injunctive relief. Dkt. No. 24 at 23; *see* Dkt. No. 24-8 at 2. Notwithstanding the fact that such order is not binding on this Court, the "Notice of Ruling" Fashion Nova
24   cites to is a summary order filed by counsel and devoid of reasoning which this Court can apply. *See* Dkt. No. 24-9 at 3–4.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND
ORDERING PARTIES TO SHOW CAUSE - 12

1    Civ. Code §§ 1636–1639; *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash.

2    2005).

3        Here, the Court finds that the plain meaning of the Terms supports Dembiczak's

4    interpretation. Concluding otherwise would reach a result inconsistent with the plain text of the

5    Terms, which—despite Fashion Nova's arguments to the contrary, *see* Dkt. No. 32 at 6, 13—frame

6    the question of whether a lawsuit is "an action by a party for . . . injunctive relief" as a binary one:

7    it either is or is not. Far from invalidating the arbitration agreement, reading the arbitration

8    provision in this manner hews to the words drafted by Fashion Nova and agreed to by Dembiczak.

9        As an initial matter, the notice of arbitration toward the beginning of the Terms states that

10    "**ARBITRATION IS MANDATORY AND THE EXCLUSIVE REMEDY FOR ANY AND**

11    **ALL DISPUTES *UNLESS SPECIFIED BELOW* OR IF YOU OPT-OUT**," signaling that some

12    disputes may be categorically exempt from arbitration. Dkt. No. 24-2 at 2 (capitalization and

13    bolding original, emphasis added). The next eight sentences under the "Dispute Resolution by

14    Binding Arbitration and Class Action Waiver" section outline the arbitration procedures for "[a]ny

15    dispute relating in any way to your visit to, or use of, the Website, the Products, or any purchase

16    or otherwise related to this Agreement." *Id.* at 3. This capacious language covers many of

17    Dembiczak's claims. But immediately following these sentences in the same paragraph is the

18    carveout provision, which states that "[n]otwithstanding the foregoing," four groups of disputes,

19    controversies, claims, actions, or interactions "shall not be subject to arbitration":

20      •   "any dispute, controversy, or claim relating to or contesting the validity of Fashion

21         Nova's intellectual property rights and proprietary rights, including without limitation,

22         patents, trademarks, service marks, copyrights, or trade secrets";

23      •   "an action by a party for temporary, preliminary, or permanent injunctive relief,

24         whether prohibitive or mandatory, or other provisional relief";

1    • "any legal action by Fashion Nova against a non-consumer"; and

2    • "interactions with governmental and regulatory authorities."

3    *Id.* Fashion Nova's distinction between "any dispute, controversy, or claim," in the first category

4    and "legal action" and "interaction" in the third and fourth categories, respectively, suggests that

5    its use of "action" in the injunction category was intentional. Fashion Nova could have written

6    "claims" for injunctive relief—as it did with respect to intellectual property matters—but chose

7    instead to write "action" for injunctive relief. The plain meaning of "action" is an entire lawsuit or

8    legal proceeding. *Compare Action*, Black's Law Dictionary (11th ed. 2019) ("A civil or criminal

9    judicial proceeding"), *with Claim*, Black's Law Dictionary (11th ed. 2019) ("An interest or remedy

10   recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment

11   of a right or thing"); *see also Tolbert v. Stevenson*, 635 F.3d 646, 650–52 (4th Cir. 2011) (noting

12   the difference between "claim" and "action" and finding the plain meaning of the latter "to mean

13   an entire suit"); Fed. R. Civ. P. 54(b) (an "action" may contain several "claims" so that "any order

14   or other decision . . . that adjudicates fewer than all the *claims* . . . does not end the *action* as to

15   any of the *claims*" (emphasis added)). Fashion Nova's contention that the carveout was intended

16   to ensure that the Terms comport with the California Supreme Court's holding in *McGill v.*

17   *Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), Dkt. No. 24 at 21, even if true, does not alter the

18   straightforward understanding of the language it used in its Terms.

19        Furthermore, Fashion Nova fails to explain why Dembiczak's pursuit of monetary damages

20   based on alleged statutory and common law violations precludes her lawsuit from being

21   categorized as "an action by a party for temporary, preliminary, or injunctive relief." *See* Dkt. No.

22   1 at 11, 14, 19; *see also* Dkt. No. 31 at 6. Fashion Nova argues that interpreting the carveout

23   provision in the manner Dembiczak proposes would lead to absurd results and fatally weaken the

24   mandatory arbitration clause because any request for injunctive relief would preclude enforcement

of the Terms' arbitration clause. Dkt. No. 32 at 11–12. But Fashion Nova does not explain *why* that is necessarily an absurd result, or how it would make its arbitration clause any less mandatory for actions that do not seek injunctive relief. Nor does it provide the Court a basis to interpret the arbitration clause without distorting the actual text of the carveout provision. *See id.* at 12 ("The natural and only reasonable reading of the arbitration provision is that *the action to grant or deny an injunction is reserved for the Court and exempted from arbitration*." (emphasis added)). Tension between the arbitration and carveout provisions does not render the clear text of the Terms ambiguous. *See Archer & White Sales*, 935 F.3d at 283 ("The mere fact that the arbitration clause permits [plaintiff] to avoid arbitration by adding a claim for injunctive relief does not change the clause's plain meaning. . . . Fundamentally, defendants ask us to rewrite the unambiguous arbitration clause. We cannot.").

Furthermore, none of the cases upon which Fashion Nova relies includes language as explicit as the language included in Fashion Nova's Terms. *See, e.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285–86 (9th Cir. 2009); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484–85 (9th Cir. 2020); *Farr v. Acima Credit LLC*, No. 20-CV-8619-YGR, 2021 WL 2826709, at *4–6 (N.D. Cal. July 7, 2021), *reconsideration denied*, 2021 WL 5161923 (N.D. Cal. Nov. 5, 2021); *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 938–40 (N.D. Cal. 2019). For example, in *Comedy Club*, the Ninth Circuit reviewed a district court's order confirming an arbitration award in a case involving the following carveout provision: "notwithstanding this agreement to arbitrate, the parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose and for the purpose of compelling arbitration and/or enforcing any arbitration award[.]" 553 F.3d at 1285 (alteration omitted). The court found that "[t]he language 'in addition to arbitration' . . . suggests that arbitration still applies to all disputes, but that in addition, the parties are 'entitled to pursue

equitable remedies' before courts." *Id.* The court further reasoned that "[i]f the parties intended to carve out an exception to arbitration for all equitable claims, they could have done so without the language 'in addition to arbitration.'" *Id.*; *see also Dohrmann*, 823 F. App'x at 484 (concluding that the carveout provision that "*any party to the arbitration* may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction" permitted "the district court to issue equitable relief in aid of arbitration, not determine the merits of an arbitrable dispute." (emphasis added)). In this case, by contrast, rather than additive or permissive phrasing, the carveout phrasing is prohibitive, unambiguously stating that an action for injunctive relief "shall not be subject to arbitration[.]" Dkt. No. 24-2 at 3.

Similarly, in *Tabas*, the relevant carveout provision included an exception outside the arbitration clause section for "either party seeking injunctive or equitable relief[.]" 401 F. Supp. 3d at 938. Relying on *Comedy Club*, the court found that the parties could have more clearly included an exception within the arbitration clause itself if they intended to carve out equitable claims. *Id.* at 938–40. And in *Farr*, the agreement stated that "[b]oth parties may seek remedies which don't claim money damages" including "pre-judgment seizure, injunctions, or equitable relief." 2021 WL 2826709, at *4 (emphasis omitted). The court concluded that this "provision does not exempt all equitable claims but was intended to apply only to claims designed to maintain the status quo between the parties." *Id.* at *4–6 (cleaned up; emphasis omitted). Here, however, the Terms provide a carveout for "an action," not just certain "remedies," and the carveout is directly within the arbitration provision itself, leaving no daylight for an alternative interpretation of the clear terms of the agreement. Dkt. No. 24-2 at 3.

Therefore, the Court finds that this suit is "an action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief," and not within the ambit of the Terms' mandatory arbitration clause.

*(b) The Carveout's Forum Selection Clause States That Actions for Injunctive Relief Must Be Brought in California*

As noted above, the carveout provision also contains a forum selection clause: actions for injunctive relief "may be adjudicated only in the state and federal courts of California[.]" Dkt. No. 24-2 at 3. Neither party addresses this in its briefing, but given the Court's conclusion that the carveout provision applies to this case, it follows that this forum selection clause would apply with equal force. *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 63 (2013) ("[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." (cleaned up)). And considering that Fashion Nova is headquartered in southern California, Dkt. No. 1 at 5, and the arbitration provision mandates that any arbitration take place in Los Angeles, Dkt. No. 24-2 at 3, it appears that the Southern District of California is the appropriate venue for these proceedings. *Textile Unlimited, Inc.*, 240 F.3d at 786. Accordingly, the parties are ordered to show cause within 21 days of this Order why this case should not be transferred to the United States District Court for the Southern District of California. *See, e.g.*, *Lexington Ins. Co. v. Centex Homes*, No. 10-CV-00655-SOM-KSC, 2011 WL 1548950, at *3 (D. Haw. Apr. 21, 2011).

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES Fashion Nova's Motion to Compel Arbitration and Stay Proceedings, Dkt. No. 24, and ORDERS the parties to show cause within 21 days why this case should not be transferred to the United States District Court for the Southern District of California. The parties' responses shall not exceed 2,800 words. The Court's April 21, 2023 Order staying the initial case deadlines and answer deadline remains in effect. Dkt. No. 30.

Dated this 13th day of February, 2024.

Lauren King
United States District Judge